**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 24-1641

---

UNITED STATES OF AMERICA,

v.

WILLIAM MANDERVILLE,

Appellant

---

Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:23-cr-00901-001)
District Judge: Honorable Michael A. Shipp

---

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 23, 2025

Before: HARDIMAN, AMBRO, and SMITH, *Circuit Judges*

(Opinion filed: June 6, 2025 )

OPINION[*]

AMBRO, *Circuit Judge*

William Manderville appeals his conviction and sentence for conspiring to distribute and actually distributing methamphetamine and heroin. His appointed counsel seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), as she sees no nonfrivolous issues to appeal. But her *Anders* brief is woefully inadequate. Although the Government has provided a brief meticulously reviewing the record, we will not bless a barebones *Anders* brief simply because the Government has done counsel's job for her. Instead, we discharge counsel and direct the Clerk of Court to appoint new counsel for Manderville to review the record as required by the Sixth and Fourteenth Amendments.

**I**

Between August 2020 and his arrest in April 2023, Manderville trafficked large amounts of heroin, methamphetamine, and PCP between Georgia and New Jersey. During this period, the United States Postal Service seized several packages with Manderville's fingerprints on them and with return addresses associated with him. In April 2023, USPS Postal Inspectors called Manderville to inform him that a package he had asked about under the name "Perry Walker"—one of his aliases—was available for pickup. Manderville went to retrieve the package at a post office in Atlanta, Georgia, where he was then

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

arrested. Postal Inspectors found documents listing the alias associated with the package, $450 in cash, two cellphones, oxycodone pills, MDMA pills, THC gummies, and marijuana on Manderville's person and in his car.

Manderville pled guilty to a two-count information charging him with: (1) conspiring to distribute 50 grams or more of methamphetamine and 100 grams or more of heroin in violation of 21 U.S.C. § 846; and (2) distributing 50 grams or more of methamphetamine and 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B). In exchange for Manderville's guilty plea, the Government agreed not to bring additional charges based on his trafficking activities between August 2020 and May 2023. Manderville and the Government did not stipulate to a drug quantity but agreed that a sentence between 60 and 84 months was reasonable based on the sentencing factors under 18 U.S.C. § 3553(a). He agreed not to appeal any sentence within that stipulated range.

At the plea colloquy, the District Court confirmed that Manderville understood English, was not intoxicated, and was voluntarily pleading guilty. It also informed Manderville of his constitutional rights, the possible collateral consequences of his plea, and his appellate and collateral-review rights. Having assured itself that Manderville was pleading guilty knowingly and voluntarily, the Court accepted the guilty plea.

At sentencing, the Probation Officer calculated that Manderville's base offense level was 32, which his timely acceptance of responsibility reduced to 29, and that his criminal history category was VI. His recommended punishment under the Sentencing Guidelines was thus between 151- and 188-months' imprisonment. Manderville's sole objection to the presentence report's calculation was that the PCP he had trafficked

should not count toward his offense level because he pled guilty only to trafficking heroin and methamphetamine. The District Court rejected this argument.

The Court then heard the parties' arguments for the stipulated sentence range of 60 to 84 months. It considered the sentencing factors under § 3553(a) and then sentenced Manderville to 108-months' imprisonment. This sentence was above the stipulated range, but 43 months below the bottom of the Guidelines range.

Manderville timely appealed. His counsel filed an *Anders* brief representing that she had reviewed the record and found no nonfrivolous issues to raise on appeal. The substance of the brief is one page, and the argument section states, in its entirety, that "[w]ithin the purview of *Anders v. United States*, 386 U.S. 738 (1967), the District Court did not err in the imposition of sentence upon appellant." *Anders* Br. 12. Manderville has not filed his own pro se brief. The Government filed a comprehensive brief explaining why, in its view, there were no issues of arguable merit.

## II

When, after reviewing the District Court record, "counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to *Anders* …." 3d Cir. L.A.R. 109.2(a) (2011). In considering that motion, we must determine "(1) whether counsel's brief in support of [her] motion fulfills the requirements of L.A.R. 109.2(a); and (2) whether an independent review of the record presents any non-frivolous issues." *United States v. Langley*, 52 F.4th 564, 569 (3d Cir. 2022).

An *Anders* brief meets the requirements of Local Rule 109.2(a) if it shows that counsel "has thoroughly examined the record in search of appealable issues" and "explains why those issues are frivolous." *Id.* "Whether counsel has satisfied [her] '*Anders* obligation' determines the scope of our review at the second step of our inquiry.'" *United States v. Brookins*, 132 F.4th 659, 666 (3d Cir. 2025) (quoting *Langley*, 52 F.4th at 569). "Once the *Anders* brief is filed, our examination of the record is plenary, and we conduct 'a full examination of all the proceedings to decide whether the case is wholly frivolous.'" *Id.* (quoting *Langley*, 52 F.4th at 568).

The *Anders* brief before us is shockingly deficient. It is fourteen pages long. Only one of those pages provides anything approaching substance. And even then, that one page does not bother to identify any issues or why they lack merit. It merely asserts that "[t]here is no non-frivolous issue on which to base a request for a reversal of the sentence below." *Anders* Br. 12. "That is precisely the sort of 'bare conclusion' the *Anders* Court declared to be 'not enough.'" *Brookins*, 132 F.4th at 670 (quoting *Anders*, 386 U.S. at 742). Counsel's *Anders* brief is unacceptable.

If we reject an *Anders* brief as "inadequate to assist the court in its review," our Local Rules provide that we are to "appoint substitute counsel, order supplemental briefing and restore the case to the calendar." 3d Cir. L.A.R. 109.2(a). Although we have before us the Government's comprehensive brief carefully evaluating whether Manderville's appeal has merit, we decline to reach the merits because "we believe it unwise to do so." *Brookins*, 132 F.4th at 671. Reaching the merits "would tacitly condone the filing of an inadequate *Anders* brief when the Government … 'did appellate counsel's job for

[her].'" *Id.* Instead, "[b]ecause we have not been provided the assurances that *Anders* was designed to provide a reviewing court, we will discharge defense counsel," and direct the Clerk of Court to appoint new counsel to conduct "the conscientious examination required by *Anders*." *Id.*

*       *       *

Though "adversarial zeal may be more difficult for counsel to muster while writing an *Anders* brief than it is when arguing for an acquittal, our system demands from counsel a consistent commitment to a client and to the court at every stage of judicial proceedings." *Id.* Manderville's counsel abandoned that commitment here. Her *Anders* brief was inadequate, so we will discharge her and appoint new counsel to conduct the review of the record required by *Anders*.